Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MCCAFFREE FINANACIAL CORP.,** <br> Plaintiff, <br> v. <br> **ADP, INC.,** *et al.*, <br> Defendants. | Civil Action No. 20-5492 (ES) (JRA) <br><br> **OPINION** |

SALAS, DISTRICT JUDGE

Plaintiff McCaffree Financial Corp. brings claims of breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendants ADP, Inc.; ADP TotalSource Group, Inc.; and the Administrative Committee of the ADP TotalSource Retirement Savings Plan. (D.E. No. 1 ("Compl.")). Defendants move to dismiss the Complaint, arguing (among other things) that Plaintiff does not have constitutional or statutory standing to sue. (D.E. No. 20-1 ("Mov. Br.") at 11–15). Plaintiff responds that it has constitutional standing because it might be sued as a co-fiduciary for Defendants' breach of fiduciary duties, and that it has statutory standing as a fiduciary. (D.E. No. 39 ("Opp. Br.") at 12). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' motion is GRANTED.

I.  **BACKGROUND**

As alleged in the Complaint, Plaintiff is a participating employer in a multiple-employer 401(k) defined contribution plan (the "Plan"),[1] which is governed under ERISA. (Compl. ¶ 3). A

---

[1] The Plan is formally titled "ADP TotalSource Retirement Savings Plan." (D.E. No. 20-3, Ex. A, Plan § 2.35). The Court may consider the Plan as an indisputably authentic document that is explicitly relied upon and integral to the Complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to

1

multiple-employer plan is an ERISA plan that is, among other things, "sponsored by more than one employer."  Lee T. Polk, ERISA Practice and Litigation § 2:6 (2021) (hereinafter, "Polk"). The Plan here is vast.  According to the Complaint, it is sponsored by over 5,000 participating employers, it has over 114,000 participating employees, and it has accumulated assets worth over $4.4 billion.  (Compl. ¶¶ 3–4 & 78(a)).

The Plan "irrevocably" designates the "Company"—that is, Defendant ADP TotalSource Group, Inc.—as the agent of each adopting employer "with respect to [the employer's] relations with the Trustee and Plan Administrator for the purpose of this Plan." (Plan §§ 2.10 & 12.3).  The Trustee of the Plan is Voya National Trust Company.  (Compl. ¶ 27).  And the Plan Administrator is the "Committee," members of which are appointed by ADP TotalSource Group.  (Plan §§ 8.1 & 8.8).  The Committee, as Plan Administrator, is responsible for administering the Plan.  (*Id.* § 8.1).  The Committee is also the Plan's named fiduciary.  (*Id.* § 2.9A).  ADP TotalSource Group may, "in its sole discretion," designate another person or entity as Plan Administrator.  (*Id.* § 8.8). If ADP TotalSource Group abolishes the Committee, then ADP TotalSource Group would become the Plan's named fiduciary and the Plan Administrator.  (*Id.* § 8.8).

New employers may join the Plan without the consent or agreement of other participating employers and may negotiate amendments to the Plan that would apply only to them.  (*Id.* §§ 12.1 & 12.6).  However, amendments to the Plan are effective only upon the consent of ADP TotalSource Group and the Trustee "where such consent is necessary in accordance with the terms of this Plan."  (*Id.* § 12.6).  An adopting employer may discontinue or revoke its participation in

---

dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

the Plan. (*Id.* § 12.7). There appears to be no limitation on an adopting employer's ability to do so.

Plaintiff alleges that Defendants are fiduciaries under ERISA and therefore owe fiduciary duties to the Plan. (Compl. ¶ 5). Defendants, Plaintiff alleges, "maintain the Plan[] and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services." (*Id.*). And according to Plaintiff, Defendants breached their fiduciary duties to the Plan by subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs, by failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest, and by permitting objectively imprudent investment options. (*Id.* ¶¶ 29–69).

Defendants move to dismiss the Complaint, arguing that Plaintiff does not have constitutional or statutory standing to sue, among other things. (Mov. Br. at 11–15).

## II.  LEGAL STANDARDS

Under Rule 12(b)(1), a court may dismiss a claim at the pleading stage if the court does not have jurisdiction. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). Defendants a raise a facial attack to Plaintiff's constitutional standing; therefore, the Court accepts Plaintiff's factual allegations as true. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

3

While motions to dismiss for lack of standing are generally assessed under Rule 12(b)(1), motions to dismiss for lack of statutory standing under ERISA are assessed under the Rule 12(b)(6) framework because such challenges are not jurisdictional. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION

#### A. Constitutional Standing

Constitutional standing is derived from Article III's "case or controversy" requirement. *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Constitutional standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). That is, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Id.* The first element—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (quoting *Spokeo*, 578 U.S. at 338). It requires "the party invoking federal jurisdiction" to "establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both 'concrete and particularized'; and third, that the injury is 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo*, 578 U.S. at 339).

Defendants argue that the Complaint fails to allege injury in fact, and points out "[t]here is no ERISA exception to Article III." (Mov. Br. at 15 n.24 (quoting *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020))). Plaintiff responds that it has suffered an injury in fact because, as a co-fiduciary, it is at risk of being sued under ERISA for Defendants' unlawful conduct. (Opp. Br. at 15–17 (outlining co-fiduciary liability under 29 U.S.C. § 1105)).

Plaintiff is correct that a co-fiduciary may be sued under ERISA under certain circumstances. *See* § 1105. And some courts, albeit in other contexts, have held that the risk of liability is sufficient to confer Article III standing. *See Choirock Contents Factory Co. v. Saucier*, 801 F. App'x 754, 762 (Fed. Cir. 2020). However, as will be discussed below, the term "fiduciary" bears a legal meaning. *See Glaziers & Glassworkers Union Loc. No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1179 (3d Cir. 1996); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014). And Plaintiff's allegations concerning its status as a fiduciary are conclusory and non-specific. Moreover, Plaintiff does not offer in its opposition brief, much less plead in its Complaint, any facts suggesting that it could actually be held liable as a co-fiduciary. Plaintiff does not allege, for example, how a future plaintiff could reasonably plead that Plaintiff was a co-fiduciary "with respect to" the unlawful conduct allegedly committed by Defendants. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d

Cir. 2011) (dismissing claim against an alleged co-fiduciary because the co-fiduciary did not have a fiduciary duty "with respect to" the particular activity). However, whether Plaintiff adequately alleged it is a fiduciary significantly overlaps with its statutory standing. Accordingly, the Court will more fully address statutory standing below.[2]

### B. Statutory Standing

Under ERISA, a "participant, beneficiary or fiduciary" may bring a civil action for appropriate relief against a plan fiduciary for breach of fiduciary duty. *See* 29 U.S.C. §§ 1104, 1105, 1109 & 1132(a)(2). As noted, Plaintiff claims its right to sue as a fiduciary of the Plan. (Compl. ¶¶ 1, 10, 78(c) & 78(d)).

A person or entity may be a fiduciary in one of three ways: (i) "being named as the fiduciary in the instrument establishing the employee benefit plan"; (ii) "being named as a fiduciary pursuant to a procedure specified in the plan instrument"; and (iii) "being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)." *Glaziers*, 93 F.3d at 1179; *see also John Hancock*, 768 F.3d at 291.

As noted above, Plaintiff does not allege that the Plan identifies it as a fiduciary. And such an allegation would be inconsistent with the clear terms of the Plan, which identifies the Committee

---

[2] In addition, *Thole*, 140 S. Ct. 1615, appears to suggest that a fiduciary has constitutional standing to sue. There, two beneficiaries sued for mismanagement of a defined-benefit plan. *Id.* at 1618. "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id.* In light of that feature of the plan, the Supreme Court rejected the beneficiaries' standing to sue because, regardless of the defendants' mismanagement, the beneficiaries stood to receive the same benefits from the plan no matter what. *Id.* at 1619. In other words, the beneficiaries suffered no injury as a result of the fiduciaries' decisions.

In reaching that conclusion, the Court made two observations that are potentially relevant to a fiduciary's constitutional standing to sue—suggesting that, at least in this context, Plaintiff's constitutional standing turns on its statutory standing as a fiduciary. First, the Court explained that cases brought by "guardians, receivers, and executors" were distinguishable to cases brought by beneficiaries, because beneficiaries are not "legally or contractually appointed to represent the plan." *Id.* at 1620. Fiduciaries, in contrast, are legally and contractually appointed to represent a plan. Second, the Court dispelled the concern that, if the beneficiaries did not have standing to sue, then "no one w[ould] meaningfully regulate plan fiduciaries." *Id.* at 1621. The Court explained, albeit in dicta, that "fiduciaries (including trustees who are fiduciaries) can sue other fiduciaries." *Id.*

as the named fiduciary. Moreover, Plaintiff does not allege that it was named as a fiduciary pursuant to a procedure specified in the Plan.

Thus, Plaintiff may be a fiduciary at this stage if the Complaint plausibly alleges that it meets the criteria set out in 29 U.S.C. § 1002(21)(A):

> [A] person is a fiduciary with respect to a plan to the extent
>
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

Section 1002(21)(A), the Supreme Court has said, defines the term fiduciary "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). This functional definition "is contextual," in that a person is a fiduciary "'only to the extent' [the] person acts in an administrative, managerial, or advisory capacity to an employee benefits plan." *John Hancock*, 768 F.3d at 291 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)). Thus, a court must ask "whether [the person] is a fiduciary with respect to the *particular activity in question*." *Id.* (quoting *Renfro*, 671 F.3d at 321) (internal citations omitted). "Whether an employer who is also an ERISA plan sponsor is a fiduciary of the plan generally requires a detailed analysis of the employer's actions and whether those actions were performed in the employer's fiduciary capacity." *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004). Indeed, "[t]he mere fact that an employer is a sponsor does not mean that the

7

employer is also a fiduciary." *Healthtek Sols., Inc. v. Fortis Benefits Ins. Co.*, 274 F. Supp. 2d 767, 775 (E.D. Va. 2003).

Defendants argue that the "Complaint fails to allege a single fact indicating that Plaintiff is a fiduciary for purposes of establishing that it has standing." (Mov. Br. at 12). The Court agrees.

Though repeatedly, the Complaint offers a bare legal conclusion that Plaintiff and other participating employers are fiduciaries. (Compl. ¶¶ 1, 8, 10, 17, 77 & 78(d)). However, the Court agrees with Defendants that "[f]iduciary status under ERISA is not merely a title, but a conclusion based on facts." (Mov. Br. at 12 (citing 29 U.S.C. § 1102(21)(A); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990))). The Complaint does not offer any facts plausibly supporting that legal conclusion.

The Complaint does not plausibly allege that Plaintiff is a fiduciary under any of § 1002(21)(A)'s three subsections. The Complaint does identify any authority or control, discretionary or otherwise, that Plaintiff has with respect to management or administration of the Plan or Plan assets. Nor does the Complaint identify any investment advice that Plaintiff offers, directly or indirectly, with respect to Plan assets. Nor does the Complaint allege that Plaintiff has the authority to render such advice. Much less does the Complaint suggest that Plaintiff is a co-fiduciary "with respect to" Defendants' alleged conduct giving rise to Plaintiff's claims. *See Renfro*, 671 F.3d at 324. According to Plaintiff, Defendants breached their fiduciary duties by subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs, by failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest, and by permitting objectively imprudent investment options. (Compl. ¶¶ 29–69). Yet, the Complaint does not identify what authority or control Plaintiff had with respect to those actions

taken by Defendants. Indeed, the Complaint does not suggest, and Plaintiff does not argue in its opposition brief, that Plaintiff has any authority, control, or oversight duties with respect to setting or negotiating total plan costs or recordkeeping/administrative costs, appointing or terminating the recordkeeper or trustee, or advising or setting investment options. Moreover, the Court cannot glean any such responsibilities pursuant to the terms of the Plan.

In fact, the terms of the Plan suggest that Plaintiff has no authority over the Plan's named fiduciary, the Plan Administrator, or the Plan Trustee. *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) (explaining that "the power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A)"); *id.* at 1466 (holding that an employer had standing to sue because the employer "was a fiduciary to the limited extent it exercised its discretionary responsibility 'to monitor appropriately' and remove the Plan Administrator and Plan Supervisor"). Indeed, the Plan "irrevocably" designates Defendant ADP TotalSource Group as the agent of each adopting employer "with respect to its relations with the Trustee and Plan Administrator for the purpose of this Plan." (Plan §§ 2.10 & 12.3). The Plan Administrator and the Plan's named fiduciary are the same entity, the Committee, members of which are appointed by ADP TotalSource Group. (*Id.* §§ 2.9A, 8.1 & 8.8). ADP TotalSource Group may, "in its sole discretion," designate another person or entity as Plan Administrator. (*Id.* § 8.8).

Accordingly, based on the absence of allegations in the Complaint suggesting that Plaintiff is a fiduciary, and based on the terms of the Plan suggesting that Plaintiff is not a fiduciary, Plaintiff fails to plausibly plead that it is a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). For

9

that reason, Plaintiff has neither constitutional nor statutory standing. Plaintiff's arguments in opposition are not persuasive.

*First*, Plaintiff argues that "[t]he very decision to commence and maintain participation in a particular [multiple-employer plan] . . . is a quintessential fiduciary function." (Opp. Br. at 13). Said another way, Plaintiff appears to suggest that once Defendants began to mismanage the Plan, Plaintiff had a fiduciary duty to cease participating in the Plan. However, as Defendants point out (Mov. Br. at 13), an employer acts in a settlor capacity when it adopts, amends, modifies, or terminates an ERISA plan—whether it does so at any time or for whatever reason. *See Ash v. Heat & Frost Insulators & Allied Workers Loc. No. 23 Pension Fund*, No. 16-0539, 2017 WL 4284346, at *3 (M.D. Pa. Sept. 27, 2017) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 127 (3d Cir. 2006); *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997)); *see also Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) ("It is well established . . . that an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations.").

Plaintiff insists that the above-stated rule—that initiating and terminating an ERISA plan is a settlor, not fiduciary function—applies only to single-employer plans and does not apply to multiple-employer plans such as the one in at issue here. (Opp. Br. at 14). However, as Defendants point out, there is no apparent reason to treat multiple-employer plans differently. (D.E. No. 44 ("Reply") at 3–4). At least with respect to a different category of multiemployer plans,[3] the Third

---

[3] A "multiemployer plan" is different from a "multiple-employer" plan in that the former is a type of plan specially defined under ERISA as involving, among other things, "one or more collective bargaining agreements between one or more employee organizations and more than one employer." 29 U.S.C. § 1002 (37)(A). "Thus, a noncollectively bargained plan to which several unrelated employers contribute is an example of a multiple-employer plan," such as the one at issue here. *See* Polk § 2:6. New employers may join the Plan without the consent or agreement of other participating employers and may negotiate amendments to the Plan that would apply only to them. (Plan §§ 12.1 & 12.6).

10

Circuit has held that the above-stated rule often "applies to both single-employer sponsors and multi-employer sponsors under ERISA," for the foundational Supreme Court decision on this issue "lacks any hint that single- and multi-employer plans should be analyzed differently." *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997). To be sure, there might be instances where a court should distinguish between the different types of plans. *Id.* However, Plaintiff has provided no reason for the Court to do so here. *See Mushalla v. Teamsters Loc. No. 863 Pension Fund*, 300 F.3d 391, 397 (3d Cir. 2002) ("[W]here there is no material difference between the way a multiemployer plan and a single employer plan are administered, 'the simple fact that the plan at issue is a multiemployer plan is insufficient' to alter the fiduciary duties of the administrator." (quoting *Walling*, 125 F.3d at 118)). More importantly, there are no allegations in the Complaint suggesting that the Court should do so.

**Second**, Plaintiff cites the preamble of a Department of Labor ("DOL") regulation. (Opp. Br. at 13–14 (citing 84 Fed. Reg. 37,508)). This regulation defines the term employer under 29 U.S.C. § 1002(5). *See* 29 C.F.R. § 2510.3-5. In the preamble, and more particularly "[i]n a section discussing the potential for fraud in [multiple-employer plans], the DOL explained, 'employers exercise a fiduciary duty in choosing to begin and continue participating in a [multiple-employer plan] and should exercise appropriate care, prudence, and loyalty to ensure that the [multiple-employer plan] is sponsored and operated by high quality, reputable providers.'" (*Id.* (quoting 84 Fed. Reg. at 37,538)). However, the Court agrees with Defendants that the DOL preamble is not entitled to deference. (Reply at 4).[4]

---

[4] Plaintiff does not address the appropriate deference to give the DOL's preamble. And Defendants do so but not in great detail. The Court finds it necessary to explore the issue because the DOL's preamble was the central authority cited by Plaintiff.

11

The preamble is not entitled to *Chevron* deference—a doctrine that compels a court to defer to an agency's reasonable construction of an ambiguous statute. The preamble was not passed pursuant to the DOL's rule-making authority, and "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *accord Helen Mining Co. v. Elliott*, 859 F.3d 226, 234 n.10 (3d Cir. 2017); *see also Farina v. Nokia Inc.*, 625 F.3d 97, 127 n.27 (3d Cir. 2010) (explaining that *Chevron* "deference applies only to statements carrying the force of law"). Moreover, *Chevron* "deference is not owed to an agency decision that lacks reasoning." *Singh v. Att'y Gen. of United States*, 12 F.4th 262, 275 (3d Cir. 2021). And the DOL's preamble offers no reasoning in support of its purported construction of 29 U.S.C. § 1002(21)(A). Moreover, the preamble does not even cite § 1002(21)(A).

Nor is the DOL's preamble entitled to *Auer* deference—a doctrine that compels a court to defer to an agency's reasonable construction of its own ambiguous regulation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–17 (2019) (outlining the parameters of *Auer* deference). The preamble does not purport to interpret the DOL's regulation concerning the definition of fiduciary, codified at 29 C.F.R. § 2510.3-21, which expands on ERISA's functional definition but does not state that employers exercise a fiduciary function when choosing to participate in a multiple-employer plan. As with 29 U.S.C. § 1002(21)(A), the preamble does not cite 29 C.F.R. § 2510.3-21.

Finally, the DOL's preamble is not entitled to *Skidmore* deference—a doctrine that compels a court to respect an agency's view to the extent it has the "power to persuade." *Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 427 (3d Cir. 2017). To determine

whether an agency's view has the power to persuade, a court should consider "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* More particularly, the Third Circuit follows a "'sliding scale' test," assessing "whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy." *Id.* (quoting *Hagans v. Comm'r of Social Sec.*, 694 F.3d 287, 304–05 (3d Cir. 2012)).

Here, the factors supporting *Skidmore* deference are not present. The preamble was not issued contemporaneously with 29 U.S.C. § 1002(21)(A). *See Hagans*, 694 F.3d at 304 ("[M]ore deference is granted under *Skidmore*'s sliding scale test when the agency's interpretation is 'issued contemporaneous[ly] with a statute.'" (quoting *Madison v. Res. for Hum. Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000))). The DOL's *actual* regulation on the definition of the term "fiduciary," contained in 29 C.F.R. § 2510.3-21, is *less* consistent with the preamble and *more* consistent with the functional approach outlined above. *See Wyeth v. Levine*, 555 U.S. 555, 577 (2009) (holding that a preamble was not entitled to deference in part because the preamble reversed the agency's long-standing policy); *Hagans*, 694 F.3d at 304 ("Less deference is afforded when an agency's interpretation is inconsistent with its prior positions."). While the preamble might not be unreasonable, and while the DOL acts well within its expertise when defining the term "fiduciary," the preamble's passing statement is in tension with the Supreme Court's decades-long interpretation of 29 U.S.C. § 1002(21)(A)—that initiating and terminating an ERISA plan is a settlor function. *See Lockheed*, 517 U.S. at 890. The preamble does not consider the Supreme

13

Court's view.[5]  Finally, the preamble was issued with a regulation concerning the definition of the term "employer," suggesting that the DOL was not actually concerned with altering the definition of the term "fiduciary," and that the public was not aware that the DOL might do so.  *See Wyeth*, 555 U.S. at 577 (holding that a preamble was not entitled to deference in part because the agency did give interested parties sufficient notice or opportunity to comment); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 158 n.13 (1982) ("[W]e look to the preamble *only* for the administrative construction of the regulation . . . ." (emphasis added)).  For those reasons, *Skidmore* deference is inappropriate.

***Third***, Plaintiff argues that its decision to commence participation in the Plan is "akin to functions that, in any context under ERISA, courts routinely find to be fiduciary functions (*e.g.*, selecting and retaining service providers)."  (Opp. Br. at 14 (citing *John Hancock*, 768 F.3d at 293)).  However, Plaintiff provides no legal support for that proposition.  Nor does Plaintiff cite anything in the Complaint to support it.  Moreover, the Third Circuit in *John Hancock* did not suggest that a decision to commence participation in an ERISA plan is akin to selecting and retaining a service provider.  Instead, *John Hancock* discussed the discretionary authority of a trustee to "decide[] whether to agree to the service provider's terms" after engaging in "negotiation at arm's length over the terms of their agreement."  768 F.3d at 293.

Here, the Complaint provides no plausible basis to consider Plaintiff as the functional equivalent of a trustee.  Nor does it contain allegations concerning Plaintiff's authority to negotiate and choose the terms of the service-provider agreement.  Moreover, as Defendants point out in reply, such an argument would be "contrary to the terms of the Plan, which appoints the Committee as Plan Administrator and named fiduciary with responsibility for the hiring and monitoring of the

---

[5]   The Court is not aware of an instance where *Skidmore* deference effectively reversed a rule announced by the Supreme Court.

14

Plan's service providers." (Reply at 5 (citing Plan §§ 2.36, 8.1, 8.8 & 8.9)). "Moreover, Plaintiff has no such authority because each of the Plan's adopting employers 'irrevocably' designates ADP TotalSource as its agent 'with respect to all of its relations with the Trustee and Plan Administrator for the purpose of this Plan.'" (*Id.* (citing Plan § 12.3)).

*Fourth*, Plaintiff appears to suggest, though not clearly, that it is a fiduciary because it "and other participating employer co-sponsors make contributions credited to participant accounts." (Opp. Br. at 14–15). To the extent Plaintiff actually makes that argument, the Court again disagrees. "[I]ssues concerning the funding of a pension plan are 'settlor functions which do not implicate fiduciary duties.'" *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 316 (W.D. Pa. 2011) (first quoting *In re Wachovia Corp. ERISA Litig.*, No. 09-0262, 2010 WL 3081359, at *11 (W.D.N.C. Aug. 6, 2010); and then citing *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000); *In re RCN Litig.*, No. 04-5068, 2006 WL 753149, at *6 n.4 (D.N.J. Mar. 21, 2006)); *see also Bator v. Dist. Council 4*, 972 F.3d 924, 931 (7th Cir. 2020) ("[W]here an employer or union 'select[s] levels of funding' and 'decide[s] who receives pension benefits and in what amounts,' they are acting in a settlor capacity, not as a fiduciary." (quoting *Johnson v. Georgia-Pac. Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994))); *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("'Settlor' functions, in contrast, include conduct such as establishing, funding, amending, or terminating a plan.").

Having failed to sufficiently plead constitutional and statutory standing, Plaintiff's Complaint is dismissed. However, the Complaint is dismissed *without prejudice* to Plaintiff filing an amended complaint that provides a basis for its standing to sue as a fiduciary. Plaintiff

theoretically might be able to allege that a participating employer had discretionary authority with respect to the Plan that could serve as a basis for suit by a Plan beneficiary.[6]

## IV. CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 20) is GRANTED, and Plaintiff's Complaint is dismissed *without prejudice*. An appropriate Order accompanies this Opinion.

Date: March 31, 2022

Hon. Esther Salas, U.S.D.J.

---

[6] In light of the above holding, the Court does not address the other arguments for dismissal.