Alnisa S. Bell
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendants ADP, Inc., ADP Totalsource
Group, Inc., the Administrative Committee of the ADP
Totalsource Retirement Savings Plan

[Additional Counsel Listed On Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| McCAFFREE FINANCIAL CORP. and MARK McCAFFREE, individually, on behalf of all situated participants, beneficiaries, and plan sponsors or other fiduciaries, and on behalf of the ADP TOTALSOURCE RETIREMENT SAVINGS PLAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADP, INC.; ADP TOTALSOURCE GROUP, INC.; the ADMINISTRATIVE COMMITTEE OF THE ADP TOTALSOURCE RETIREMENT SAVINGS PLAN; 401K ADVISORS, INC. n/k/a NFP RETIREMENT, and DOES No. 1-10, Whose Names Are Currently Unknown,<br><br>                    Defendants. | Civil Action No.: 2:20-cv-05492-ES-MAH<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ADP DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**Motion Date: _____** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT .......................................................................................................8

I.     Legal Standard .........................................................................................8

II.    Plaintiffs have not demonstrated that they have standing. ...........................10

       A.    MFC is not a fiduciary, and does not have standing to pursue
             the claims asserted. ............................................................................11

       B.    McCaffree has not alleged any injury in fact with respect to the
             investment-related claims. ..................................................................14

III.   Plaintiffs' allegations regarding Total Plan Costs and Recordkeeping
       Fees reveal nothing about Defendants' process, and do not support a
       reasonable inference of imprudent conduct. ..................................................18

IV.    Plaintiffs' categorical, hindsight-based claims of alleged imprudence
       of certain investment options do not state a viable claim under ERISA. .......25

       A.    ERISA does not require fiduciaries to offer only the cheapest,
             best performing funds. ........................................................................26

       B.    Plaintiffs' allegations of "underperformance" are over-stated,
             and fail to suggest any imprudence in Defendants' process. ..............28

       C.    Actively-managed funds are not *per se* imprudent, and
             comparisons of them to passive index funds are irrelevant. ..............31

       D.    Plaintiffs' claim that the American Funds EuroPacific R4 Fund
             was not in the cheapest possible share class is speculative. ...............33

V.     Plaintiffs do not plausibly allege any breach of the duty of loyalty. .............34

VI.    To the extent Plaintiffs are asserting claims for failure to act in
       accordance with Plan documents, the Amended Complaint is entirely
       conclusory. ...............................................................................................37

VII.   McCaffree's claims were not tolled by the prior filing, and their
       timeliness must be measured from the Amended Complaint........................38

VIII.  The Complaint should be dismissed with prejudice.....................................40

CONCLUSION .......................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pipe and Constr. Co. v. Utah*,
    414 U.S. 538 (1974)................................................................................38

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................9, 10

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007) ...............................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................9, 10, 37

*Bennett v. Conrail Matched Savs. Plan Admin. Comm.*,
    168 F.3d 671 (3d Cir. 1999) ...............................................................14

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009) ...............................................................10

*Boley v. Universal Health Servs., Inc.*,
    No. 21-2014, 2022 WL 1768984 (3d Cir. June 1, 2022)............................16, 17

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...............................................................22, 35

*Brown v. Medtronic, Inc.*,
    628 F.3d 451 (8th Cir. 2018) ...............................................................16

*Burlington Coat Fact. Sec. Litig.*,
    114 F.3d 1410 (3d Cir.1997) ...............................................................21, 34

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017)................................................................38, 39

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
    908 F.3d 872 (3d Cir. 2018) ...............................................................9

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ........................................................................................14

*Danza v. Fid. Mgmt. Tr. Co.*,
    533 F. App'x. 120 (3d Cir. 2013) ...................................................................34

*Davis v. Abington Mem'l Hosp.*,
    765 F.3d 236 (3d Cir. 2014) ..........................................................................37

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2000) ...................................................................26, 31

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) .............................................................................8

*De Vito v. Liquid Holdings Grp., Inc.*,
    No. CV156969KMJBC, 2018 WL 6891832 (D.N.J. Dec. 31, 2018)................39

*Divane v. Northwestern University*,
    953 F.3d 980 (7th Cir. 2020) .........................................................................40

*Dorman v. Charles Schwab Corp.*,
    No. 17 Civ. 285 (CW), 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) .................29

*Dorman v. Charles Schwab Corp.*,
    No. 17-0285, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018)............................26

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ...........................................................................11

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
    No. 17-6685, 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ............................31

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)..........................................................................................9

*FOCUS v. Allegheny Cty. Ct. of Common Pleas*,
    75 F.3d 834 (3d Cir. 1996) .............................................................................10

*George v. Kraft Foods Glob., Inc.*,
    641 F.3d 786 (7th Cir. 2011) .........................................................................40

*Hecker v. Deere Co.*,
  556 F.3d 575 (7th Cir. 2009) ...................................................................26, 34

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  846 F.3d 625 (3d Cir. 2017) ..............................................................................8

*Hozier v. Midwest Fasteners, Inc.*,
  908 F.2d 1155 (3d Cir. 1990) ...........................................................................11

*Hughes v. Nw. Univ.*,
  142 S. Ct. 737 (2022)................................................................................*passim*

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012) ...............................................................................9

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) ............................................................................29

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.
  (U.S.A)*,
  768 F.3d 284 (3d Cir. 2014) ........................................................................11, 12

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) ............................................................................40

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
  513 F. App'x. 78 (2d Cir. 2013) ...................................................................27, 30

*Leber v. Citigroup 401(K) Plan Inv. Comm.*,
  129 F. Supp. 3d 4 (S.D.N.Y. 2015) .......................................................29, 38, 39

*Leckey v. Stefano*,
  501 F.3d 212 (3d Cir. 2007) .............................................................................18

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) ............................................................................34

*Lewis v. Casey*,
  518 U.S. 343 (1996)..........................................................................................15

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)..........................................................................................14

v

*Loomis v. Exelon Corp.*,
 658 F.3d 667 (7th Cir. 2011) .......................................................................6, 32

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)...........................................................................................10

*McNamara v. New Jersey*,
 No. CIV. 10-3651 RBK, 2010 WL 4810627 (D.N.J. Nov. 15,
 2010) ..................................................................................................................21

*Meiners v. Wells Fargo & Co.*,
 898 F.3d 820 (8th Cir. 2018) .............................................................................27

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
 801 F.3d 369 (3d Cir. 2015) ...............................................................................8

*Nicolas v. Trs. of Princeton Univ.*,
 No. 17 Civ. 3695, 2017 WL 4455897 (D.N.J. Sept. 22, 2017) .........................36

*Patterson v. Capital Grp. Cos.*,
 No. 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018)................................27

*Patterson v. Stanley*,
 No. 16 Civ. 6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7,
 2019) ............................................................................................................28, 35

*Pegram v. Herdrich*,
 530 U.S. 211 (2000)...........................................................................................11

*Renfro v. Unisys Corp.*,
 671 F.3d 314 (3d Cir. 2011) ......................................................................*passim*

*Renfro v. Unisys Corp.*,
 No. 07 Civ. 2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) .................25, 26

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
 No. 15 Civ. 1839 (VAB), 2016 WL 7494320 (D. Conn. Dec. 30,
 2016) ..................................................................................................................31

*Sacerdote v. New York Univ.*,
 No. 16-CV-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25,
 2017) ..................................................................................................................36

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ........................................................................14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...........................................................................10

*Sweda v. Univ. Pa.*,
   923 F.3d 320 (3d Cir. 2019) ........................................................*passim*

*Taylor v. United Techs. Corp.*,
   No. 06 Civ. 1494 (WWE), 2009 WL 535779 (D. Conn. Mar. 3,
   2009) ...................................................................................................31

*Thole v. U. S. Bank N.A*,
   140 S. Ct. 1615 (2020)........................................................................17

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015)............................................................................33

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   579 F.3d 220 (3d Cir. 2009) ...............................................................11

*In re Unisys Sav. Plan Litig.*,
   173 F.3d 145 (3d Cir. 1999) ...............................................................32

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996) .................................................................18

*In re Unisys Sav. Plan Litig.*,
   No. 91–3067, 1997 WL 732473 (E.D.Pa. Nov. 24, 1997) ..................30

*Walling v. Brady*,
   125 F.3d 114 (3d Cir. 1997) ...............................................................22

*White v. Chevron Corp.*,
   752 F. App'x 453 (9th Cir. 2018) .......................................................37

*White v. Chevron Corp.*,
   No. 16 Civ. 793 (PJH), 2016 WL 4502808 (N.D. Cal. Aug. 29,
   2016) .............................................................................................29, 30

*White v. Chevron Corp.*,
    No. 16 Civ. 793 (PJH), 2017 WL 2352137 (N.D. Cal. May 13,
    2017) ...............................................................................................34, 36

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) .........................................................21

*Zuber v. Boscov's*,
    871 F.3d 255 (3d Cir. 2017) ................................................................9

## INTRODUCTION

In granting Defendants' prior motion to dismiss, the Court held that Plaintiff McCaffree Financial Corporation ("MFC") had failed to sufficiently plead constitutional or statutory standing. (*See* ECF 91 at 15.) While the Court granted MFC leave to file an amended complaint showing that it has standing, MFC has again failed to do so. Instead, MFC repleads the same theories the Court already rejected. That is, MFC again alleges that it has constitutional and statutory standing as a fiduciary authorized to bring suit under § 502(a)(2) of ERISA because it (1) had the power to amend the Plan terms as to its employees, (2) selected this Plan from among other Multiple Employer Plans ("MEPs"), and (3) could have elected to leave the Plan in favor of a different MEP. MFC relies on the same regulatory preamble the Court already has found is entitled to "no deference." Plaintiffs' Amended Complaint offers no new basis for MFC's standing and the Court should dismiss it.

Plaintiffs' Amended Complaint also adds Mark McCaffree ("McCaffree") as a named plaintiff in his individual capacity. While McCaffree—as a Plan participant—does not have the same statutory standing issues as MFC, he nonetheless fails to plead facts showing that he has constitutional standing. Specifically, and though he purports to challenge the prudence of certain investment options offered in the Plan, McCaffree does not identify the funds, if

any, in which he invested. As such, he pleads no facts showing that any alleged excessive fee would have caused him harm, or that prevailing on the investment-related claims would change his ultimate retirement benefit at all. He has not pleaded an injury-in-fact, and has not demonstrated that he has standing as to the investment-related claims.

Even if Plaintiffs had standing, their claims still would fail as a matter of law. Plaintiffs' Amended Complaint makes no attempt to cure the substantive pleading defects found in the original complaint. Indeed, Paragraphs 32 through 99 of the Amended Complaint—which, aside from MFC's standing allegations (ECF 96, ¶¶ 20–31) comprise the entirety of the "Factual Allegations," "Class Allegations," and causes of action sections of the Amended Complaint—are substantively identical to Paragraphs 21 through 88 of the original complaint, with only semantic changes between the two to account for the addition of McCaffree as a plaintiff. The arguments in Defendants' initial motion to dismiss as to MFC's failure to state a claim apply with equal force to the new pleading.

Plaintiffs' imprudence claims rely solely on hindsight-based comparisons to other plans and other investment options. But fiduciary performance is not to be measured in hindsight; it is measured by the process and decisions at the time they were made, based on information then available to the fiduciary. Plaintiffs' comparison of the Plan to alleged cheaper, better-performing alternatives fails to

account for the fact that there exists "a range of reasonable judgments a fiduciary may make based on her experience and expertise," and that there is no fiduciary obligation to offer participants only the highest performing and cheapest possible retirement plan. At most, Plaintiffs' allegations identify conduct that is equally consistent with lawful behavior. They also utterly fail to address the unique nature of the Plan as a MEP, rendering many of their comparisons inapt. Their allegations are insufficient to state a claim.

Finally, with the addition of McCaffree to this action, Plaintiffs have added a named Plaintiff who was not encompassed by their original proposed class, and whose claims were not tolled by the initial filing. Applying ERISA's six-year statute of repose, the Court should dismiss any claim McCaffree asserts for conduct prior to May 2, 2016 (six years before the Amended Complaint was filed).

## BACKGROUND[1]

The ADP TotalSource Retirement Savings Plan (the "Plan") is a 401(k) defined-contribution employee pension benefit plan. (Am. Compl., ECF 96 at ¶ 3.) Unlike most 401(k) plans—which are offered by a single sponsoring employer for

---

[1] The factual background relevant to this motion was previously set out in Defendants' motion to dismiss the original complaint (ECF 20-1 at 10–16), and summarized by the Court in granting that motion. (ECF 91 at 1–3.) Those facts are largely unchanged with respect to this motion, and are incorporated by reference here.

its eligible employees—the Plan is a "multiple employer 401(k) plan" or "MEP," sponsored by ADP TotalSource Group, Inc. ("TotalSource"). (ECF 96 at ¶¶ 1, 3.) ¶¶ 3; 15; 22.) TotalSource—a subsidiary of ADP, Inc. ("ADP")—is a Professional Employer Organization ("PEO"), which enters into agreements with other companies whereby it jointly employs those other company's employees. (ECF 96 at ¶ 13.) In addition to establishing a contractual joint employer relationship, TotalSource contracts with those companies to provide a variety of comprehensive administration outsourcing solutions, one of which is participation in the Plan. (ECF 96 at ¶¶ 1, 3, 13.)

TotalSource is responsible for appointing members to the Administrative Committee of the ADP TotalSource Retirement Savings (the "Committee"), the Plan Administrator.[2] Defendants, through the work done by the Committee in that role, are responsible for "selecting, monitoring, and retaining service provider(s) that provide investment, recordkeeping, and other administrative services" to the Plan. (ECF 96 at ¶ 5.)

For employees to become eligible to participate in the Plan, their employers must enter into an Adoption Agreement. (ECF 96 at ¶ 23.) The Adoption Agreement, in turn, requires those employers to agree that participation in the Plan

_____

[2] Plaintiffs refer to ADP, TotalSource, and the Committee as the "ADP Defendants." (ECF 96 at ¶ 1.)

will be governed—as is required by ERISA—by the terms of the Plan document. (ECF 96 at ¶ 23.) Under the terms of the Plan, each adopting employer has the right and ability to adopt and amend certain terms; any amendment enacted by an adopting employer is applicable only to that employer's employees and their beneficiaries. (ECF 96 at ¶¶ 24–25.) Adopting employers are also (with some limitations) free to end their participation in the Plan, at which point any assets allocable to that employer's participants and beneficiaries must be removed from the Plan, often within short notice periods once an employer elects to discontinue participation. (ECF 96 at ¶¶ 26, 30.)

MFC is a participating employer, and its employees are eligible to participate in the Plan. (ECF 96 at ¶¶ 3, 10.) McCaffree is an MFC employee, and a Plan participant. (ECF 96 at ¶ 11.)

The Plan is a defined contribution plan. That means that a participant's benefit under the Plan is the sum of employee and employer contributions and investment performance, less fees and expenses. (*See* ECF 96 at ¶ 19.) At the end of 2018, the Plan had approximately 114,254 participants with account balances and assets totaling over $4.44 billion. (ECF 96 at ¶ 4.) Plaintiffs allege that during the alleged class period, the Plan offered participants a variety of investment options in which the participants could elect to invest, including collective trusts, mutual funds, and a self-directed brokerage window. (ECF 96 at ¶ 34.)

Participants in the Plan pay investment management fees, generally expressed as an "expense ratio." *See* 29 C.F.R. § 2550.404a–5(d)(1)(iv)(A); *see also* ECF 96 at ¶ 41 n.8 (defining "Total Plan Cost" to include investment management fees). The expense ratio represents the total fund expenses divided by the assets of the fund. *See* 29 C.F.R. § 2550.404a–5(d)(1)(iv)(A). These fees cover services including analysis, selection, and acquisition of the assets in the fund, the costs associated with participants buying and selling their interests in the fund, and monitoring when to change the composition of the investments in the fund. *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011).

The Plan also incurs administrative fees, some of which are paid by participants. One component of these fees is for "recordkeeping," that is, "maintaining records with respect to employees' accounts in the Plan, effecting participant Plan investment elections, and performing administrative functions such as processing loan and withdrawal requests." (ECF 96 at ¶ 37.) Beyond recordkeeping, administrative fees also include those for Investment Advisor (participant level), Investment Advisor (plan level), Legal, Audit, Administrator, Consultant, Brokerage, and Participant Communication. (ECF 96 at ¶ 46.)[3] Many

---

[3] *See also* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf. ("The day-to-day operation of a plan involves expenses for basic

of these services are provided by a service provider known as a "recordkeeper." (ECF 96 at ¶ 37.) Throughout the alleged Class Period, the Plan's recordkeeper was Voya Institutional Plan Services, LLC ("Voya Financial"). (ECF 96 at ¶ 37.)

Plaintiffs allege that Defendants breached ERISA's duties of loyalty and prudence based on excessive fees. (ECF 96 at ¶¶ 41–56.) Specifically, Plaintiffs claim that the Plan's "Total Plan Cost"—a metric by which they purport to have calculated the sum of all fees and expenses associated with the operation of the Plan—shows that the fees associated with participation in this Plan were "outrageous" and "significantly above the market average for similarly-sized and situated 401(k) plans." (ECF 96 at ¶ 41.) They further allege that the Plan's recordkeeping fees and administrative fees, standing alone, are "incredibly high," and that prudent management of the plan would have resulted in a per-participant administrative cost of less than $35 per participant. (ECF 96 at ¶ 44.) Plaintiffs allege that Defendants' alleged failure to obtain lower fees for the Plan, coupled with the selection of investment options for the Plan's lineup that were run by entities affiliated with the Plan's recordkeeper, had the result of benefiting "Voya,"

administrative services — such as plan recordkeeping, accounting, legal and trustee services — that are necessary for administering the plan as a whole. In addition, a . . . 401(k) plan also may offer a host of additional services, such as telephone voice response systems, access to a customer service representative, educational seminars, retirement planning software, investment advice, electronic access to plan information, daily valuation, and online transactions.").

rather than Plan participants. (ECF 96 at ¶¶ 50–56.) Finally, Plaintiffs claim that Defendants failed to monitor and remove from the Plan certain allegedly imprudent investment options. (ECF 96 at ¶¶ 57–80.)

**ARGUMENT**

## I.    Legal Standard

Under Rule 12(b)(1), a court may dismiss a claim at the pleading stage if the court does not have jurisdiction, including where the plaintiff fails to demonstrate it has standing. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). Where, as here, a defendant raises a facial attack on the plaintiff's constitutional standing— that is, the motion asserts that the pleaded facts, taken as true, do not establish constitutional standing—the motion is assessed under the same standard as a motion under Rule 12(b)(6). *See id.* at 632–33.[4]

---

[4] Unlike motions to dismiss for lack of constitutional standing, motions to dismiss for lack of statutory standing under ERISA are not jurisdictional and, therefore, are assessed under the Rule 12(b)(6), rather than Rule 12(b)(1). *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sweda v. Univ. Pa.*, 923 F.3d 320, 325 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

In deciding a motion to dismiss claims alleging a violation of ERISA's duty of prudence, courts must apply the pleading standard established in *Iqbal* and *Twombly*. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). "Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." *Id.* (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409,

425 (2014)). Ultimately, the plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because courts must assess a fiduciary's performance by looking at process rather than results, this means that, to state a claim for breach of fiduciary duty, a plaintiff must allege well-pleaded and non-conclusory facts from which the court could "infer . . . that the fiduciary's process was flawed." *Sweda*, 923 F.3d at 329  (quoting *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011)).[5]

## II.   **Plaintiffs have not demonstrated that they have standing.**

It is Plaintiffs' burden to establish standing. *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) (citing *FOCUS v. Allegheny Cty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

Constitutional standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In addition, to proceed on the claims

---

[5] To the extent the Third Circuit suggested in *Sweda* that the *Twombly*/*Iqbal* pleading standard did not apply to ERISA fiduciary breach claims, *see Sweda*, 923 F.3d at 326, it was overruled by Supreme Court. *See Hughes*, 142 S. Ct. at 742 (remanding dismissal of ERISA fiduciary breach claims, with instruction to apply pleading standard discussed in *Iqbal* and *Twombly*).

asserted here, each Plaintiff must plead facts sufficient to establish statutory standing. *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 419 (3d Cir. 2013). Under ERISA, this requires that the plaintiff plead facts sufficient to establish they are a "participant, beneficiary or fiduciary" bringing suit for appropriate relief against a plan fiduciary for breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2).

### A. MFC is not a fiduciary, and does not have standing to pursue the claims asserted.

As it did in the initial complaint, MFC asserts that it has both statutory and constitutional standing because it claims to be a fiduciary. (*See* ECF 96 at ¶¶ 10, 25–31, 89c.) As the Court has already held, however, "[f]iduciary status under ERISA is not merely a title, but a conclusion based on facts." (ECF 91 at 8 (citing 29 U.S.C. § 1102(21)(A))); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990))). Further, ERISA's functional definition of "fiduciary" is contextual, in that a person is a fiduciary "'only to the extent' [the] person acts in an administrative, managerial, or advisory capacity to an employee benefits plan." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)). Thus, MFC must do more than show that it is, generally, a "fiduciary;" it must establish that it is "a fiduciary with respect to the particular activity in

11

question." *See id.* (quoting *Renfro*, 671 F.3d at 321) (internal citations omitted). While it has now pleaded certain "facts" in support of its claim to be a fiduciary, MFC still fails to plausibly allege that it meets the criteria set out in 29 U.S.C. § 1002(21)(A), which govern that determination.

According to Plaintiffs, Defendants breached their fiduciary duties by subjecting the Plan to excessive total plan costs and excessive recordkeeping costs, by failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest, and by permitting objectively imprudent investment options. (ECF 96 at ¶¶ 40–80). Like the original complaint, however, the Amended Complaint does identify any facts showing that MFC had authority or control, discretionary or otherwise, with respect to management or administration of the Plan or Plan assets. Nor does MFC identify any role it has with respect to providing investment advice or selecting or retaining investment options for the Plan. While MFC repeats that it is a fiduciary, its pleads nothing showing that it ever was one "with respect to" the alleged conduct giving rise to Plaintiffs' claims. *See Renfro*, 671 F.3d at 324.

Rather than amending the complaint to allege any ways in which it has authority, control, or oversight duties with respect to setting or negotiating total plan costs or recordkeeping/administrative costs, appointing or terminating the recordkeeper or trustee, or advising or setting investment options, MFC has

amended its complaint to plead the same arguments the Court already rejected. (*See* ECF 91 at 9–15.)

More specifically, MFC again suggests that is a Plan fiduciary because (i) it chose to initiate participation in the Plan as a participating employer; (ii) it signed an Adoption Agreement to initiate participation in the Plan, under which it had authority to amend portions of the Plan for its employees and/or to cease participation entirely; and (iii) as a result of its rights under the Adoption Agreement, it made the ongoing decision to continue participating in the Plan. (ECF 96 at ¶¶ 21–30.) MFC alleges that "[t]he responsibility of participating employers to select and monitor MEP providers, and particular discretion reserved to participating employers under the Plan, are sufficient to establish the fiduciary status of participating employers under ERISA." (ECF 96 at ¶ 31.)

MFC bases both its constitutional and statutory standing on the claim that it is a fiduciary. The Court already has considered—and rejected—the assertion that the roles MFC now alleges it played with respect to the Plan were sufficient to confer fiduciary status or standing to sue. The adoption, amendment, maintenance, and termination of a retirement plan are not fiduciary functions.[6] (*See* ECF 91 at

---

[6] To the extent Plaintiffs renew the argument that the Department of Labor regulations regarding MEPs indicated that these settlor functions are transformed into fiduciary actions where an employer elects to participate in a MEP (*see* ECF

10); *see also Lockheed Corp. v. Spink,* 517 U.S. 882, 890 (1996) (holding that when employers "adopt, modify, or terminate" plans "they do not act as fiduciaries" (citing *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995))); *Bennett v. Conrail Matched Savs. Plan Admin. Comm.,* 168 F.3d 671, 679 (3d Cir. 1999) ("In amending a plan, the employer is acting as a settlor.")). Thus, none of the actions MFC cites are make it a fiduciary.

The Court should not disturb its prior holding on these points. MFC's claims should be dismissed with prejudice, because it is not a fiduciary and does not have standing—as either a constitutional or statutory matter—to pursue the claims asserted.

### B. McCaffree has not alleged any injury in fact with respect to the investment-related claims.

McCaffree, in his individual capacity as a Plan participant, has statutory standing under ERISA to pursue under ERISA § 501(a)(2). However, he still must meet his burden to plausibly plead facts sufficient to establish Article III standing at the pleading stage. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (holding that at the pleading stage, "the plaintiff must clearly [] allege facts

---

96 at ¶¶ 27–28), the Court has already found the cited text from the regulatory preamble is entitled to no deference, and does not alter the definition of "fiduciary" in any way, let alone in a way that supports finding MFC was a fiduciary with respect to the Plan. (ECF 91 at 11–14.)

demonstrating each element" of standing); *Lewis v. Casey*, 518 U.S. 343, 357 (1996). ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

Plaintiffs allege that, in addition to having excessive Total Plan Costs and recordkeeping fees, Defendants breached their fiduciary duties by "giv[ing] Voya *carte blanche* in designing the Plan's investment menu so as to permit Voya to extract the most fees possible." (ECF 96 at ¶ 50.) Plaintiffs further assert that, with respect to at least 16 of the Plan's investment options, the funds at-issue were imprudently selected, retained, and/or monitored by Defendants. (ECF 96 at ¶ 60.) They base these claims on allegations regarding a combination of the funds' respective performance as to comparators and/or benchmarks, the fact that they were "actively managed" funds, not passive, index-based investments, and  that, in certain instances, cheaper share classes were available to the Plan. (*See* ECF 96 at ¶¶ 61–80.)

In a defined contribution plan, such as the Plan at issue here, a participant's gains and losses are the product of the investments he selects. To establish constitutional standing on a claim that the plan's investment options (or some of

them) were imprudent, "at a minimum, a plaintiff must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions." *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2018).

The Third Circuit has recently clarified that, where a plaintiff alleges that fiduciaries breached ERISA's duty of prudence as to multiple investment options, he or she need not have invested in *all* of the challenged options to have standing. *See Boley v. Universal Health Servs., Inc.*, No. 21-2014, 2022 WL 1768984, at *4 (3d Cir. June 1, 2022). For that to be true, however, the named plaintiff must (1) still have invested in "at least one" of the challenged investment options, and (2) must be alleging that all of the challenged options are imprudent "for the same reasons." *See id.* Only if both conditions are met can the allegations, if true, establish that the plaintiff has suffered a concrete injury traceable to the alleged imprudent act. *Id.* As pleaded, McCaffree cannot meet either condition.

As to the first condition, McCaffree simply fails to allege that he invested in any of the investment options whose inclusion in the Plan he now alleges to have been a fiduciary breach. Indeed, McCaffree pleads nothing at all about his own investments. (*See generally* ECF 96.) This glaring omission precludes any finding that he has plausibly pleaded injury in fact.

If McCaffree has not invested in any of the challenged funds and "were to win this lawsuit, [he] would still receive the exact same [] benefits that [he is]

already slated to receive, not a penny more." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1619 (2020). As currently pleaded, McCaffree's allegations fail to establish that prevailing as to his investment-related claims would entitle him to any relief whatsoever. He has failed to plausibly allege that he has a "concrete stake in this dispute and therefore lack[s] Article III standing." *Id.*

As to the second condition, and as set out below with respect to the pleading of Plaintiffs' investment related claims, Plaintiffs allege a variety of differing reasons why the challenged investments are allegedly imprudent. (ECF 96 at ¶¶ 57–80.) Because Plaintiffs do not allege each of these investment options was imprudent "for the same reasons," allegations that he invested in any one of the challenged investment options would not be sufficient to allege an injury sufficient to confer standing on McCaffree to sue as to investment options alleged to be imprudent for reasons different than the funds in which he invested. *See Boley*, 2022 WL 1768984 at *4.

"There is no ERISA exception to Article III." *See Thole*, 140 S. Ct. at 1622. McCaffree has not alleged that he suffered an injury in fact based on his investments in the Plan, nor has he pleaded claims that would confer standing on him as to investment options in which he did not invest. Accordingly, the claims that allege Defendants' breached their fiduciary duties with respect to selections

and retention of certain investment options should be dismissed, as neither named Plaintiff has standing to pursue them.

### III.   Plaintiffs' allegations regarding Total Plan Costs and Recordkeeping Fees reveal nothing about Defendants' process, and do not support a reasonable inference of imprudent conduct.

ERISA fiduciaries are held to the "prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." *Sweda*, 923 F.3d at 328 (quoting ERISA § 404(a)(1)(B) (quotations omitted)). As the Third Circuit has instructed, "a court assesses a fiduciary's performance by looking at *process* rather than *results*, 'focusing on a fiduciary's conduct in arriving at a decision and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sweda*, 923 F.3d at 329 (emphasis added) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)).

To plead a plausible claim for breach of the duty of prudence, Plaintiffs must plead that "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Sweda*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)). To do so, the plaintiff must plausibly allege both that the fiduciary: (1) failed to give "appropriate

consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the . . . course of action involved . . . ," 29 C.F.R. § 2550.404a–1(b)(1)(i), and (2) that the questioned action was objectively imprudent—i.e., that no "hypothetical prudent fiduciary" would have made the same decision being challenged in the case." *See Renfro*, 671 F.3d at 322. At a minimum, to state a claim for breach of fiduciary duty, Plaintiffs must plead facts (not merely conclusions) from which the Court could "infer . . . that the fiduciary's process was flawed." *Id.* at 327. Of critical importance, "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *See Hughes*, 142 S. Ct. at 742.

Like MFC's initial complaint, Plaintiffs' amended complaint pleads nothing about Defendants' process for monitoring the fees paid for the myriad services the Plan's recordkeeper performs. Nor do they plead facts showing that the fiduciaries did not reasonably select Voya. Lacking any actionable allegations as to Defendants' fiduciary process, Plaintiffs instead resort to a series of cherry-picked comparisons, devoid of any context. First, they compare admittedly incomplete calculations of "Total Plan Costs" allegedly paid by the Plan, to aggregated data compiled from the Form 5500 filings from other single-employer plans. (*See* ECF

96 at ¶¶ 41–43.) Through that comparison, Plaintiffs assert that—in comparison to the "average" of their sample—the Plan's "Total Plan Costs" reflect a failure by Defendants to ensure that the Plan's expenses were reasonable and appropriate. (ECF 96 at ¶ 42.) These are obviously apples-to-oranges comparisons and do nothing to show a plausible breach.

Continuing their efforts to turn the pleading standard on its head, in alleging that the Plan's recordkeeping costs were "incredibly high," Plaintiffs again focus on "results" rather than "process." (ECF 96 at ¶ 44.) To bolster that claim, Plaintiffs point to the Brightscope/ICI study, and claim that the Plan's fees were "far above the industry average" for plans with over $1 billion in assets. (*See* ECF 96 at ¶¶ 46–47.)[7] Based solely on those hindsight-based comparisons of the Plan's fees to those reported in the results of a single study largely focused on a different type of plan, Plaintiffs speculate that Defendants "either engaged in virtually no examination, comparison, or benchmarking of the TPC and/or

─────────────

[7] The Brightscope/ICI study to which Plaintiffs cite is an analysis compiled from "plan-level data gathered from audited Form 5500 filings of private-sector defined contribution (DC) plans" for the year 2016. (*See* ECF 20-4 at 3.) The study generally refers to the 401(k) plans it is evaluating as being sponsored by a single "employer," and does not reference any consideration of multiemployer plans like the one at issue here. (*See generally* ECF 20-4.) Moreover, the aggregated data included in the report does not speak to the quality or quantity of services received by the plans it studies, rendering comparisons like the ones Plaintiffs attempt to draw here meaningless.

recordkeeping/administrative fees of the Plan to those of other similarly-sized 401(k) plans, or were complicit in paying grossly excessive fees." (ECF 96 at ¶ 48.) Self-serving speculation is not enough to state a claim. *McNamara v. New Jersey*, No. CIV. 10-3651 RBK, 2010 WL 4810627, at *4 (D.N.J. Nov. 15, 2010) (citing *Burlington Coat Fact. Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir.1997)) (dismissing with prejudice claims asserting nothing but "self-serving speculation that, if allowed to conduct discovery, Plaintiff might encounter some facts allowing him to [state a claim] . . . .").

Plaintiffs' amended complaint also says nothing at all about the services the Plan receives from Voya in exchange for the fees paid, and makes no effort to compare the nature or quality of those services to the services provided to comparable plans, let alone to the plans that participated in the Brightscope/ICI survey. *See, e.g., Hughes*, 142 S. Ct. at 742 (requiring that assessment of fiduciary performance be "context specific"); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (to allege a breach of fiduciary duty for excessive fees, a plaintiff must allege facts concerning factors "relevant to determining whether a fee is excessive under the circumstances."). An ERISA plan participant suing for breach of fiduciary duty must at least allege sufficient facts from which a flawed process can be inferred. *Sweda*, 923 F.3d at 329. A claim that other plans paid less in the aggregate does not raise such an inference because there are

innumerable reasons why there might be a difference in fees and only one of that multitude of possible explanations is a breach of fiduciary duty. *See Renfro*, 671 F.3d at 327 (quoting *Braden*, 588 F.3d at 596) (affirming dismissal because court was "unable 'to infer from what is alleged that the process was flawed,'" where plaintiff alleged only that fees could have been less). In assessing the sufficiency of claims alleging fiduciaries breached ERISA's duty of prudence, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. Plaintiffs' claim, however, encourages the Court to ignore the possibility of a "range" of reasonable fees, and to instead infer an imprudence process from the fact that other (non-MEP) plans allegedly had lower fees than this Plan did. That inference is unwarranted and is inconsistent with the law.

As the Court noted in granting Defendants' prior motion, there are differences between single- and multi-employer plans that provide reason to distinguish between the two. (*See* ECF 91 at 11 (citing *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997).) Here, there is no indication that *any* of the plans included in the Brightscope/ICI plan was a MEP. (*See* ECF 20-4 at 3.) Despite having a chance to plead facts showing what other MEPs pay, Plaintiffs have offered nothing but the same survey. The only reasonable inference to draw from this is that Plaintiffs know they have no relevant evidence to support their recordkeeping

fee claim.

As pleaded in the amended complaint, each participating employer has the ability to set Plan terms unique to its employees. (ECF 96 at ¶¶ 24–25.) As a result, and in contrast to a single-employer plan with a single set of rules, the administration of the Plan is not uniform across all 100,000+ participants. Plaintiffs' comparison of the all-in cost of administering the unique Plan rules applicable to each participating employer's employees to the costs of administering a very large single-employer plan is irrelevant in assessing whether the fees paid for the administrative services received by *this* Plan were reasonable.

What's more, the Internal Revenue Code and IRS rules impose administrative obligations on the Plan—as a MEP—that are more burdensome than those applicable to single-employer plans. Because the Plan is a MEP, it is "treated as" thousands of separate plans for many purposes,[8] and must—for example— collect records for numerous tests for each of the thousands of individual client-employers on an annual basis, including (i) a test for nondiscrimination in the amount of employee salary deferral contributions;[9] (ii) a test for nondiscrimination

---

[8] *See* IRS Rev. Proc. 2002-21 (May 13, 2002); Rev. Proc. 2003-86 (December 15, 2003).
[9] *See* 26 U.S.C. § 401(k)(3).

in the amount of employer matching contributions;[10] (iii) a test for

nondiscrimination in the amount of employer non-matching contributions;[11] and

(iv) a test for compliance with minimum coverage requirements.[12]

In addition, on an annual basis, the Plan's administrator must determine

whether the Plan is "top-heavy" under complex IRS rules on a client-by-client

basis for each of the over 5,000 clients, and, if so, engage in communications with

the client-employer and provide additional contributions with unique vesting

provisions just for the employees of that individual client employer. *See* 26 U.S.C.

§ 416; 26 C.F.R § 1.416-1. The Plan's administrator must also determine, annually,

whether employees should be classified as "highly compensated" under IRS rules

separately for each of the thousands of individual client-employers. *See* 26 U.S.C.

§ 414(q). Further, the Plan's administrator must determine, annually, the

deductibility of contributions for income tax purposes for each of the thousands of

individual client-employers. *See* 26 U.S.C. § 413(c)(6)(A).

Plaintiffs' comparison of this Plan to single-employer 401(k) plans does not

plausibly support an inference that the "process was flawed." *Sweda*, 923 F.3d at

329 (quotation omitted). Plaintiffs cannot simply claim that "fiduciaries could have

---

[10] *See* 26 U.S.C. § 401(m)(2).
[11] *See* 26 C.F.R. § 1.401(a)(4)-2(c).
[12] *See* 26 U.S.C. § 410(b).

done better had they worked harder to leverage their market power." *Renfro v. Unisys Corp.*, No. 07 Civ. 2098, 2010 WL 1688540, at *6 (E.D. Pa. Apr. 26, 2010), aff'd, 671 F.3d 314 (3d Cir. 2011). For these reasons, Plaintiffs' allegations regarding the amount of fees paid by single-employer plans fail to raise any plausible inference that the Plan's fiduciaries did not have a prudent process for analyzing, negotiating, and monitoring fees paid by the Plan.

## IV.   Plaintiffs' categorical, hindsight-based claims of alleged imprudence of certain investment options do not state a viable claim under ERISA.

Plaintiffs assert that several of the Plan's investment options were imprudently offered to participants during the class period. (ECF 96 at ¶¶ 57–80.) Those funds are: (i) the Voya Target Solutions Collective Trusts, (ii) the Voya Trust Company Large Cap Growth, (iii) the Voya Trust Company Large Cap Value Fund, (iv) the American Funds Washington Mutual Fund, (v) the Federated Investors Clover Small Cap Value Fund, and (vi) the American Funds EuroPacific R4 Fund. (ECF 96 at ¶¶ 57–80.)

Plaintiffs' claims regarding these funds are speculative and based exclusively on improper, hindsight comparisons to the performance of Plaintiffs' cherry-picked alternatives. For example, with respect to the Voya Target Solutions Collective Trusts, Plaintiffs assert that Defendants must have been with unwilling or unable to demand "significantly lower" fees. (ECF 96 at ¶ 66.) Plaintiffs, however do not allege what a reasonable fee for the investment would have been

25

and, in fact, appear to concede that, by selecting collective trusts for these investment options, the fiduciaries were able to secure lower fees than are available to investors in any share class of the mutual fund version of Voya's target date offerings. (ECF 96 at ¶ 66.) Plaintiffs cannot simply claim that "fiduciaries could have done better had they worked harder to leverage their market power." *Renfro*, 2010 WL 1688540, at *6.  They must plead facts showing that a lower fee was available.

### A.   ERISA does not require fiduciaries to offer only the cheapest, best performing funds.

ERISA does not require plan fiduciaries "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere Co.,* 556 F.3d 575, 586 (7th Cir. 2009); *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2000) ("But fiduciaries are not required to pick the best performing fund. Nor are they required to pick the lowest-cost fund.") (quotation and citation omitted); *Renfro*, 2010 WL 1688540, at *5 (explaining that "a plan fiduciary need not select the cheapest fund available"), *aff'd*, 671 F.3d 314 (3d Cir. 2011). Indeed, a prudent fiduciary must consider more than just price when selecting and retaining a plan's investment line-up. *See Dorman v. Charles Schwab Corp.*, No. 17-0285, 2018 WL 6803738, at *3 (N.D. Cal. Sept. 20, 2018) (dismissing claim noting that "a fiduciary considers not only modest differences in price and performance, but also other relevant

factors, such as strategy, security lending practices, economic cycles, and market cycles"); *Patterson v. Capital Grp. Cos.*, No. 17-4399, 2018 WL 748104, at *5 (C.D. Cal. Jan. 23, 2018) ("[F]iduciaries need not choose the cheapest fees available to the exclusion of other considerations—or all funds seeking investments from trusts and pension plans would have to charge the same fees regardless of the type of fund, management approach or services, performance, etc. in order to attract institutional clients."). "Prudence" is also not "prescience;" fiduciaries are not required to have selected only those investment that turn out to generate the highest return over a particular period. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund."); *see also Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x. 78, 80 (2d Cir. 2013) (affirming dismissal and stating "[i]t is well-established that allegations of poor results alone do not constitute allegations sufficient to state a claim for such a breach").

Plaintiffs' theory, however, requires that fiduciaries do both. Plaintiffs ask this Court to consider prudence challenges based only on actual returns. If adopted, Plaintiffs approach would produce absurd results, and require fiduciaries to update the Plan's investment lineup on a near-constant basis to ensure it tracked information on the highest-returning investments. "[T]he duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the

prior year's top performers." *Patterson v. Stanley*, No. 16 Civ. 6568 (RJS), 2019 WL 4934834 at *11 (S.D.N.Y. Oct. 7, 2019).

Plaintiffs' allegations that other investment options may have been cheaper and/or had higher returns than the ones included in the Plan do not plausibly support a reasonable inference that the Defendants' fiduciary process was flawed. Plaintiffs do not plausibly allege that the proposed alternative investments are even comparable to the Plan's investment options, making it impossible to know whether their comparisons actually show meaningful performance or fee differences. Even if they did, however, Plaintiffs are seeking to impose on Defendants a burden that the law does not. The Plan did not need to have the cheapest, highest-performing investments possible. Any claims resting on a contention that it did must be dismissed.

### B. Plaintiffs' allegations of "underperformance" are over-stated, and fail to suggest any imprudence in Defendants' process.

For a number of the challenged investment options, Plaintiffs assert that the Plan's investments underperformed comparators and/or benchmarks over carefully selected time periods.[13] Again, even if true, these allegations do not give rise to any

---

[13] *See*, *e.g.* Plaintiffs' Complaint, ECF 96 at ¶¶ 62 (alleging that portions of Voya Target Solutions underperformed "comparable" Vanguard funds on trailing 5-year basis); 69 (alleging Voya Large Cap Growth underperformed Russell 1000 Growth Index); 71 (Voya Large Cap Value Fund also underperformed its benchmark , the

implication that Defendants' *process* was imprudent. When considering the performance of investments over time, "three to five years . . . are still considered relatively short periods of underperformance." *Dorman v. Charles Schwab Corp.*, No. 17 Civ. 285 (CW), 2019 WL 580785, at *3, 6 (N.D. Cal. Feb. 8, 2019) (partially dismissing allegations that a particular fund "persistently and/or materially underperformed" for three to five years did not support an inference of imprudence). Multiple courts have recognized that a "fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy." *White v. Chevron Corp.*, No. 16 Civ. 793 (PJH), 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016); *see also Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (dismissing ERISA fiduciary duty claims and holding fiduciary could prudently select "funds with long-term growth potential and . . . stay with those . . . funds even during years of lower performance").

Comparison of the Plan's investments to benchmarks—standing alone—is insufficient to support a reasonable inference of imprudence. *See Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) (plaintiffs' allegations of "a history of poor . . . performance for some of the [f]unds . . . as compared to certain benchmark indices" "d[id] not raise a plausible

---

Russell 1000 Value index); 76 (Federated Investors Clover Small Cap Value Fund underperformed its benchmark, the Russell 2000 Value Index).

inference that a prudent fiduciary would have found th[ese] [f]unds to be 'so plainly risky' as to render the investments in them imprudent"); *Laboy*, 513 F. App'x at 79-80 (holding that allegations that fund had underperformed comparable funds by between 6% and 22% during the class period were insufficient to state a claim for breach of the duty of prudence). In fact, these claims are inherently nothing more than prohibited, hindsight attacks, because the information they are based on would not have been available to the fiduciaries at the time the challenged decisions were made. "[H]indsight cannot play a role in determining whether a fiduciary's actions were prudent." *In re Unisys Sav. Plan Litig.*, No. 91–3067, 1997 WL 732473, at *23 (E.D.Pa. Nov. 24, 1997), *aff'd*, 173 F.3d 145 (3d Cir. 1999).

Indeed, Plaintiffs' own allegations can be interpreted as suggesting that Defendants *did* adhere to prudent practices with respect to deciding whether to retain investment options over the class period. As Plaintiffs allege, the Voya Trust Company Large Cap Value Fund was removed from the Plan's investment lineup, and replaced with the American Funds Washington Mutual investment option. (ECF 96 at ¶ 73.) The removal of this fund, standing alone, suggests that Defendants had a prudent process for monitoring the investment lineup. *See White*, 2016 WL 4502808, at *17 (finding that removal of a fund creates a "plausible inference that the Plan fiduciaries were attentively monitoring the fund".

### C. Actively-managed funds are not *per se* imprudent, and comparisons of them to passive index funds are irrelevant.

Plaintiffs' attack on the Plan's offering of anything other than index funds is legally groundless. Index funds are not the standard for prudence, and their inclusion or lack thereof in the Plan lineup says nothing of the prudent process employed by Defendants. "[I]t is not imprudent for a fiduciary to provide both [active and passive] investment options. They have different aims, different risks, and different potential rewards that cater to different investors. Comparing apples and oranges is not a way to show that one is better or worse than the other." *Davis*, 960 F.3d at 486 (citation omitted); *see also Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-6685, 2019 WL 4466714, at *10 (S.D.N.Y. Sept. 18, 2019) ("ERISA does not require fiduciaries to include a particular mix of investment vehicles in a plan."); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 15 Civ. 1839 (VAB), 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016) (same); *Taylor v. United Techs. Corp.*, No. 06 Civ. 1494 (WWE), 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009), *aff'd*, 354 F. App'x 525 (2d Cir. 2009) (rejecting the argument that defendants breached their fiduciary duties "by offering actively managed investment options").[14]

---

[14] In actively-managed funds, "investment advisers try to find and buy underpriced securities while selling ones that the advisers think are overvalued," with an eye

To state an imprudence claim, Plaintiffs must plead facts showing that *no* hypothetical prudent fiduciary would have offered the same funds that Defendants did as part of the Plan's investment lineup. *See, e.g., In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 154 (3d Cir. 1999) (prudence of fiduciaries' challenged act is measured against what "hypothetical prudent fiduciary" would have done). Such a claim cannot be made with respect to actively managed investments; they are widely held by investors and retirement plans. Plaintiffs plead only that "market research has indicated that investors should be very skeptical of an actively-managed fund's ability to consistently outperform a passively-managed fund mimicking its benchmark." (ECF 96 at ¶ 59.) Based on that, they allege that the American Funds Washington Mutual Fund—and any other actively managed option offered in the Plan—was not an "appropriate addition to the Plan menu." (ECF 96 at ¶ 75.) Even if it is true that fiduciaries should be "skeptical" of actively-managed funds, however, that does not equate to a categorical bar on including such investments in a plan's investment benchmark.

There is no categorical rule prohibiting a 401(k) plan from making actively

---

toward beating the index. *Loomis*, 658 F.3d at 669-70. As a direct result of the associated work and resources involved in this process, actively managed funds are inherently more costly than passive "index funds," which "do not make any independent investment choices but simply track a designated portfolio such as the Standard & Poor's 500 Index." *Id.* (noting that index funds typically carry restrictions designed to prevent or discourage investor turnover).

managed funds available to participants. The portions of Plaintiffs' claims that rely on such a rule must be dismissed.

### D. Plaintiffs' claim that the American Funds EuroPacific R4 Fund was not in the cheapest possible share class is speculative.

Plaintiffs allege that Defendants breached their fiduciary duties by failing to offer the lowest-cost share class of the American Funds EuroPacific R4 Fund. (ECF 96 at ¶¶ 79–80.) More specifically, however, Plaintiffs allege only that there *existed* a share class of the fund cheaper than the one offered in the Plan. Plaintiffs do not actually allege that the lower cost share class was ever even available to the Plan, or what eligibility criteria or restrictions might have been imposed to move to the alleged lower cost share class.[15] They also offer nothing to suggest it would have been *per se* imprudent for Defendants to conclude—based on, among other things, the possibility that participating employers were free (as Plaintiffs allege) to leave the Plan at any time—that the reasonable course of action, for this Plan, did not include moving to lower cost share classes, where doing so typically requires guaranteeing the investment manager a certain minimum investment balance.

Plaintiffs' conclusory allegation that Defendants failed to negotiate to obtain

---

[15] In *Tibble v. Edison Int'l*, by contrast, the plaintiffs alleged that defendant fiduciaries failed to switch the plan's investments to lower-cost share classes that were (1) available to the plan, and (2) identical other than with respect to the price to the plan. *See* 575 U.S. 523, 526 (2015).

the lower-cost share class is insufficient to state a claim for relief. ERISA does not require use of the least expensive share class. *Renfro*, 671 F.3d at 326-28 (affirming dismissal of claim complaining of "inclusion of an array of Fidelity retail mutual funds"); *Hecker*, 556 F.3d at 586 (rejecting argument that plan should only offer institutional-class funds).

Plaintiffs' allegation that there is "no distinction whatsoever, other than price," between offering different share classes to participants is, quite simply, false. (ECF 96 at ¶ 80). *See, e.g. Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013) (explaining that, while certain share classes include lower expense ratios, the decision to offer those funds typically requires higher direct charges to plan participants on other fees). Merely alleging that the Plan offers a share class other than the one with the lowest possible fee for an individual participant is insufficient to state a prudence claim. *White v. Chevron Corp.*, No. 16 Civ. 793 (PJH), 2017 WL 2352137, at *14 (N.D. Cal. May 13, 2017) , *aff'd*, 752 F. App'x 453 (9th Cir. 2018). The Court need not accept Plaintiffs' bald assertion on this point. *Burlington Coat Factory*, 114 F.3d at 1429–30.

## V.     Plaintiffs do not plausibly allege any breach of the duty of loyalty.

Plaintiffs separately assert in their first cause of action that Defendants breached ERISA's duty of loyalty, which requires fiduciaries to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A); *Danza v.*

*Fid. Mgmt. Tr. Co.*, 533 F. App'x. 120, 123 (3d Cir. 2013) ("Section 404 in essence codifies a common law fiduciary's general duty of loyalty . . . to administer the trust solely in the interest of the beneficiaries.").

To plausibly allege a breach of the duty of loyalty, Plaintiffs would have to show that the fiduciaries acted "for the purpose" of benefitting themselves or a third party. *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *1 (S.D.N.Y. Oct. 7, 2019); *see e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) ("The complaint alleges, moreover, that these options were chosen to benefit the trustee at the expense of the participants.").

In contrast, Plaintiffs do not allege that Defendants chose investment options to improperly benefit someone other than Plan participants, but instead claim use of certain funds resulted in  payment of excessive compensation to Voya. (ECF 96 at ¶¶ 50–56.) Indeed, Plaintiffs allege that the fact that Voya acts as the Plan's recordkeeper, while certain Voya-affiliated entities also manage a portion of the Plan's investment options poses a "potential" conflict of interest. (ECF 96 at ¶ 55.)

A plaintiff cannot plead a claim for breach of the duty of prudence "simply by making a conclusory assertion that a defendant failed to act 'for the exclusive purpose of' providing benefits to participants and defraying reasonable administration expenses; instead, to implicate the concept of 'loyalty,' a plaintiff must allege plausible facts supporting an inference that the defendant acted <u>for the</u>

purpose of providing benefits to itself or someone else. *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017), *vacated on other grounds*, 9 F.4th 95 (2d Cir. 2021). There is a difference between an action that has the *effect* of benefiting a party other than participants, and one that is taken with that effect as its goal; "[t]he former may well not be a violation of the duty of loyalty." *Id.* at *6.

Plaintiffs base their loyalty claim on speculation that Defendants' decisions had the result of providing benefits to themselves or Voya. (*See* ECF 96 at ¶¶ 50–56.) This is not sufficient to state a claim. *See White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *79 (N.D. Cal. May 31, 2017) (dismissing allegations that defendant engaged recordkeeper to further the recordkeeper's interests as being entirely speculative, and unsupported by facts despite allegations that recordkeeper was defendant's largest institutional shareholder and had a policy of voting proxy shares in favor of defendant's management proposals), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

Ultimately, Plaintiffs' loyalty claims are just a repackaging of their prudence claims—they claim the fees were too high, and that the Plan paid too much compensation to Voya. This is insufficient to state a claim. *See Nicolas v. Trs. of Princeton Univ.*, No. 17 Civ. 3695, 2017 WL 4455897, at *3 (D.N.J. Sept. 22, 2017) (dismissing duty of loyalty claims where they ""piggyback[ed] off of the

prudence claims, without any independent factual predicate"). Where there are two possible explanations, "only one of which can be true and only one of which results in liability, plaintiff cannot offer allegations that are merely consistent with its favored explanation but are also consistent with the alternative explanation." *White v. Chevron Corp.*, 752 F. App'x 453, 454 (9th Cir. 2018) (quotations omitted). Plaintiffs have not pleaded facts that, if true, would require a finding that Defendants acted for the purpose of benefiting anyone other than Plan participants. Accordingly, the Court should dismiss the breach of loyalty claim.

**VI.    To the extent Plaintiffs are asserting claims for failure to act in accordance with Plan documents, the Amended Complaint is entirely conclusory.**

In Count I of the Amended Complaint, Plaintiffs assert that Defendants violated a number of sections of ERISA, including § 404(a)(1)(D). (ECF 96 at ¶ 93.) This section requires that a fiduciary act "in accordance with the documents and instruments governing the plan . . . ." *See* 29 U.S.C. § 1104(a)(1)(D). The Amended Complaint pleads nothing to back this up. Plaintiffs do not identify any Plan provision Defendants failed to follow. Plaintiffs must do more than simply provide "labels and conclusions." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The plan document claim is the epitome of labels and conclusion and must be dismissed.

## VII. McCaffree's claims were not tolled by the prior filing, and their timeliness must be measured from the Amended Complaint.

In the event that the Court finds that McCaffree has set forth sufficient allegations to adequately plead both the existence of standing and plausible claims for relief, the Court should nonetheless dismiss any claim McCaffree is asserting prior to May 2, 2016 (six years from the date the Amended Complaint was filed), as any such claim is barred by ERISA's statute of repose. *See* 29 U.S.C. § 1113(1).

In the original complaint, MFC purported to represent "current participating co-sponsors or other fiduciaries"—a group that does *not* include McCaffree. (*See* ECF 1 at ¶ 77.) The principle known as *American Pipe* tolling provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). Because McCaffree was *not* part of the originally proposed class, however, McCaffree's limitations period was not tolled by the original complaint.

Regardless, *American Pipe* does not toll statutes of repose. *See California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051–52 (2017) (*"CalPERS"*). ERISA's six-year period to file suit for breach of fiduciary duty is a statute of repose, and is not subject to tolling under *American Pipe*. *See Leber*, 323 F.R.D. at 152 (29 U.S.C. § 1113(1) is a statute of repose, and was not tolled for unnamed members of the putative class)' *see also CalPERS*, 137 S. Ct. at 2050 (citing 29 U.S.C. § 1113(1) as example of statute of repose).

As a statute of repose, 29 U.S.C. § 1113(1) "puts an outer limit on the right to bring a civil action." *CalPERS*, 134 S.Ct. at 2182. In *Leber*, the original plaintiffs in a putative ERISA class action amended their complaint to add an additional named plaintiff, to cure a standing problem. and *See* 323 F.R.D. at 152 & n.8. Following the *CalPERS* decision, the court held that *American Pipe* tolling does not apply to ERISA's statute of repose, and thus considered the timeliness of the additional plaintiff's claims from the date of the amended complaint. *Id.*[16]

Applying those principles here, 29 U.S.C. § 1113(1) sets an outer bound of six years, at the most, for McCaffree to assert claims. The Amended Complaint adding McCaffree as an individual was filed May 2, 2022. (*See* ECF 96.) Accordingly, any claim McCaffree asserts prior to May 2, 2016—on his own behalf or on behalf of a putative class—must be dismissed. *See De Vito v. Liquid Holdings Grp., Inc.*, No. CV156969KMJBC, 2018 WL 6891832, at *22 (D.N.J. Dec. 31, 2018) (dismissing putative class claims; plaintiff added to amended complaint had no timely claims under statute of repose, measured from time amended complaint was filed).

---

[16] For this reason, McCaffree's claims also were not tolled by *Berkelhammer v. ADP TotalSource Group, Inc.*, (D.N.J. Case No. 2:20-cv-05696), even if he is part of the putative class there.

## VIII.  The Complaint should be dismissed with prejudice.

Plaintiffs may not seek leave to amend their complaint when the basis of the amendment was known at the time of the initial drafting. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *overruled on other grounds* ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."); *Divane v. Northwestern University*, 953 F.3d 980, 987 (7th Cir. 2020), *overruled sub nom. on other grounds* (affirming denial of leave to amend complaint where facts were known to the plaintiff well before leave to amend sought). The Court has already held once the MFC failed to adequately plead standing. Defendants' motion to dismiss the initial complaint set out this failure in detail. Plaintiffs' Amended Complaint failed to correct the problem, and remains insufficient. Plaintiffs should not get another bite at the apple, because all relevant facts were clearly known to them at the time the Amended Complaint was filed. *See George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 790 (7th Cir. 2011).

## CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: June 6, 2022                          SEYFARTH SHAW LLP

By: */s/ Alnisa S. Bell*
    Alnisa S. Bell
    Victoria M. Vitarelli
    620 Eighth Avenue
    New York, New York 10018
    Tel: (212) 218-5500
    Fax: (212) 218-5526
    abell@seyfarth.com
    vvitarelli@seyfarth.com

    Ian H. Morrison (admitted *pro hac vice*)
    Ada W. Dolph (admitted *pro hac vice*)
    Sam Schwartz-Fenwick (admitted *pro hac vice*)
    233 S. Wacker Drive, Suite 8000
    Chicago, IL 60606-6448
    imorrison@seyfarth.com
    adolph@seyfarth.com
    sschwartz-fenwick@seyfarth.com

    *Attorney for Defendants ADP, Inc.,*
    *ADP Totalsource Group, Inc., the*
    *Administrative Committee of the*
    *ADP Totalsource Retirement Savings*
    *Plan*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she electronically filed the foregoing

Motion to Dismiss Plaintiffs' Amended Complaint with supporting papers, with

the Clerk of the United States District Court for the District of New Jersey using

the CM/ECF system on this 6th day of June, 2022, which sent notification of such

filing to the following counsel of record:

> Alec Berin, Esq.
> Miller Shah LLP
> 1845 Walnut Street, Suite 806
> Philadelphia, PA 19103
> Email: ajberin@millershah.com
>
> James C. Shah,  Esq.
> Miller Shah LLP
> 2 Hudson Place, Suite 100
> Hoboken, NJ 07030
> Email: jcshah@millershah.com

Dated: June 6, 2022

> _/s/ Alnisa S. Bell_
> Alnisa S. Bell

83700858v.7